**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE APPLICATION OF MEYDAN GROUP LLC FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 | Civil Action No. 15-02141 (JLL) (JAD)<br><br>OPINION AND ORDER |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court on an ex parte Application by Meydan Group LLC ("Petitioner") appointing A. Katherine Toomey as a commissioner of the Court to facilitate the issuance of subpoenas and the gathering of testimony and documentary evidence from three witnesses in this District: Honeywell International Inc. ("HI"), HI's Vice Chairman for Mergers and Acquisitions, Roger Fradin, and HI's Assistant General Counsel for Corporate Governance and Assistant Corporate Secretary, Jacqueline Whorms Katzel pursuant to 28 U.S.C. § 1782(a).[1] Petitioner contends that "each of these witnesses has information that Meydan wishes to use in foreign civil and criminal proceedings presently pending in Dubai, United Arab Emirates. The information may also become relevant in England, depending on the decision reached in a matter

---

[1] Because this Application is made ex parte, the Court makes no ruling with respect to whether Petitioners' concerns are justified or whether the scope of their request is reasonable. However, ex parte applications under 28 U.S.C. § 1782 are frequently granted "where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application." In re Application of Mesa Power Group, LLC, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012) (citation omitted). In addition, once the subpoenas are served, Respondents will have the opportunity to move to quash or modify the subpoenas under Federal Rule of Civil Procedure 45.

1

currently before the Court of Appeal of England and Wales." (ECF No. 1-14, at 1). For the reasons set forth below, Petitioner's Application is **GRANTED**.

### I. BACKGROUND

Meydan is a Limited Liability Company incorporated in Dubai. (Suaiman Decl., ECF No. 1-13, ¶ 4). In 2007, Meydan began a project to construct a state of the art racecourse, which would be the home track of the Dubai World Cup, the world's richest horse race, along with hotels, restaurants, and other attractions. (Id. ¶¶ 5, 6). In 2006, a Malaysian firm, Teo A. Khing Design Consultants ("TAK"), was retained first as a consultant, and ultimately as the project manager to oversee the project. (Id. ¶ 9). "TAK acted as Meydan's representative in matters relating to the Racecourse Project and was responsible for, *inter alia*, conducting the tender process for the nomination of subcontractors to carry out works for the Racecourse Project." (Id. ¶ 11). In 2008, after the project began, TAK invited Honeywell International Middle East Limited (Dubai Branch) ("Honeywell Dubai")[2] "to tender for the contract to provide and install an extra low voltage ('ELV') power system and related equipment for the Racecourse Project" ("the Invitation to Tender"). (Id. ¶ 13).

Meyden asserts that "Honeywell Dubai consistently represented itself to Meydan as part of the 'Honeywell group', and documents submitted by it in connection with the tender bore the corporate logo of Honeywell." (ECF No. 1-14, at 2). In June 2009, due to trouble with a joint venture, and after TAK's suggestion, Meydan executed a contract solely with Honeywell Dubai to complete the ELV works. (Suaiman Decl., ECF No. 1-13, ¶¶ 15, 16).

---

[2] Honeywell International Middle East Limited is a company incorporated in Bermuda ("Honeywell Bermuda"), and Honeywell Dubai is a branch of Honeywell Bermuda. (Suaiman Decl., ECF No. 1-13, ¶ 14). Honeywell Dubai, however, is independently registered to do business in Dubai. (Id.). Both Honeywell Bermuda and Honeywell Dubai are affiliates of Honeywell International Inc. ("HI"). (Id.).

After a time, it became apparent to Meydan that Honeywell Dubai was allegedly not performing under the contract and the relationship between the two ultimately collapsed. (Id. ¶ 17). After various payment disputes and Notices of Suspension of Work, Honeywell Dubai eventually abandoned the site of the racecourse in or around July 2010. (Id. ¶¶ 18, 19). Meydan alleges that they began to receive emails in or around August 2011, from "persons involved in the work on the site alleging bribery and corruption." (Id. ¶ 20). TAK, who was still the project manager, allegedly refused to cooperate with Meydan's investigation into the matter. (Id. ¶¶ 21, 22). Meydan alleges that in or around November 2011, it discovered that TAK had "absconded from the site altogether, removing nearly all project documents and destroying computer equipment so as to leave no evidence of TAK's activities or the Racecourse Project itself." (Id. ¶ 22).

As a result of the investigation, Meydan ultimately determined that:

i)   there was collusion between Honeywell Dubai and/or Honeywell Bermuda and TAK concerning the tender which appears to have been designed to give Honeywell Dubai an advantage in procuring the ELV contract in that several portions of the Invitation to Tender were substantially similar to HI's own standard specification documents, leading to the unmistakable inference that HI and/or its affiliates supplied its own documents and agreed with TAK to have HI specifications written into the tender documents;

ii)  Honeywell Dubai and/or Honeywell Bermuda paid TAK special and unjustified amounts – which were falsely characterized in the Invitation to Tender as various types of tender fees and "lithography charges" – in order to induce TAK to recommend Honeywell Dubai's bid for the ELV contract; and

iii) throughout the contract, Honeywell Dubai submitted inflated interim payment applications, which were certified as due and owing by TAK as the project manager (a step necessary for their payment), and therefore paid by Meydan, despite the fact that such payments were not properly due and owing.

(Id. ¶ 23). This dispute ultimately resulted in the initiation of arbitration proceedings in Dubai. (ECF No. 1-14, at 4). Although not a party to the ELV contract, Honeywell Bermuda issued

3

proceedings against "Meydan LLC", which also was not a party to the contract. (Id.). Subsequently, Petitioners Meydan Group LLC, initiated proceedings against Honeywell Dubai. (Id.). In light of the Dubai proceedings, which include arbitration, civil, and criminal complaints, and the appeal of an arbitration award to the Court of Appeal in England, Meydan seeks "information relating to any investigation conducted by Respondents in relation to the racecourse project and any employment actions taken as a result of the investigation." (Id. at 11). More specifically, Meydan seeks "information and documents related to TAK, the ELV tender, contract, and performance by Honeywell Dubai as well as the relationship between the various Honeywell entities at issue." (Id. at 10).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." A district court is authorized to grant an application under § 1782 if the following three statutory requirements are met:

> (1) the person from whom discovery is sought resides or is found within the district;
> (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

If the statutory requirements are met, a district court may, in its discretion, grant the application. The Supreme Court has identified four discretionary factors that the district court can consider when ruling on a § 1782(a) request":

4

>  (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and (4) whether the § 1782 application contains unduly intrusive or burdensome discovery requests.

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).

### III. DISCUSSION

#### A. Statutory Factors

The Court finds that Petitioner's Application satisfies all the statutory requirements. First, Petitioner has provided evidence demonstrating that Respondents reside or are found in this District. Honeywell International is located and headquartered at 101 Columbia Road, Morristown, New Jersey. (ECF No. 1-14, at 12). "Respondent Roger Fradin is the Vice Chairman responsible for mergers and acquisitions for HI and works at its headquarters in Morristown. Respondent Jacqueline Whorms Katzel is the Assistant General Counsel for Corporate Governance and Assistant Corporate Secretary at HI, is the Assistant Secretary of Honeywell Bermuda, and works at the HI headquarters in Morristown." (Id. at 12-13). In addition, Ms. Katzel owns property within the District. (Id. at 13).

Second, the discovery sought is for use in two criminal complaints against Honeywell Dubai in Dubai, an arbitration proceeding before the Dubai International Arbitration Center ("DIAC"), a civil complaint, and ratification of an arbitration award before the Dubai Court of First Instance and Dubai Court of Appeal, all arising from the bribery, corruption, and forgery allegations. This satisfies the foreign tribunal requirement under § 1782. See 28 U.S.C. § 1782 ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign

5

or international tribunal, including criminal investigations conducted before formal accusation"); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 249 (2004) ("Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings'").

Finally, Petitioner is a litigant in each of the international proceedings, and therefore qualifies as an interested person under the statute. See Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782").

### B. Discretionary Factors

*i.  Jurisdictional Reach of the Foreign Tribunal*

The United States Supreme Court has recognized,

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding, as Intel is here, the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

Intel, 542 U.S. at 244. Petitioners characterize this first discretionary factor as a "perfect description of the Applicant's circumstances, as the Respondents may be beyond the disclosure powers of the Dubai courts and the DIAC." (ECF No. 1-14, at 16). While Honeywell Dubai and Honeywell Bermuda are affiliates of Honeywell International Inc., (Suaiman Decl., ECF No. 1-13, ¶ 14), Petitioner has not indicated to the Court that Respondents are in fact participants in the foreign proceedings. Given the information that was provided to the Court, this discretionary factor weighs in favor of granting Petitioner's Application.


### ii.     *Nature and Receptivity of the Foreign Tribunal*

Under the second discretionary factor, "a court presented with a § 1782(a) request may consider the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance." Intel, 542 U.S. at 244. There is no evidence before the Court indicating whether the courts and DIAC in Dubai, along with the Court of Appeal in England and Wales would be receptive to U.S. federal-court jurisdictional assistance. However. "[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence." Gov't of Ghana v. ProEnergy Servs. LLC, No. 11-9002, 2011 WL 2652755, at *4 (W.D. Mo. June 6, 2011) (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099–1100 (2d. Cir.1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Based on the evidence before this Court, there is no indication that the DIAC and the courts in Dubai and England would be non-receptive to the evidence sought by Petitioners.

### iii.     *Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies*

The third discretionary factor determines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." Intel, 542 U.S. at 244-45. There is nothing to suggest that Petitioner's Application is an attempt to circumvent foreign proof-gathering restrictions. Petitioners are seeking discovery from Respondents to further the criminal investigation in Dubai and for potential use in Petitioner's civil proceedings. (ECF No. 1-14, at 17). As such, this factors weighs in favor of granting Petitioner's Application.

### iv. Unduly Intrusive or Burdensome Requests

Under the final discretionary factor, the Court must consider whether the discovery sought is unduly intrusive or burdensome. The subpoenas on their face appear to be neither. Nevertheless, because this application was made to the Court *ex parte*, the Court is without sufficient information to evaluate whether the discovery sought is unduly intrusive or burdensome to Respondents. Once Petitioners serve the requested subpoenas, Respondents will have the opportunity to object or seek an Order from this Court modifying or quashing the subpoenas.

Based on the foregoing, the Court finds that the discretionary factors weigh in favor of granting Petitioner's Application for discovery pursuant to § 1782. Accordingly, because Petitioner's Application meets both the statutory requirements and the discretionary factors of § 1782, Petitioner's Application is **GRANTED**.

## IV. CONCLUSION AND ORDER

Having considered Petitioner's submission, and for the reasons set forth above;

IT IS on this 21st day of May, 2015,

**ORDERED** that Petitioner's Application for an *ex parte* Order compelling discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782(a), (ECF No 1), is **GRANTED**.

SO ORDERED

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:     Hon. Jose L. Linares, U.S.D.J.